IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTOPHER LEYJA,                )
                                  )
            Petitioner,           )
                                  )
v.                                )       Case No. CIV-09-265-W
                                  )
STATE OF OKLAHOMA,                )
                                  )
            Respondent.           )

## REPORT AND RECOMMENDATION

The Petitioner, Mr. Christopher Leyja, is a state inmate who requests: (1) a writ of

habeas corpus,[1] and (2) a stay to add a claim. The Court should deny both requests.

## BACKGROUND

In state court, Mr. Leyja was convicted on three charges involving a former girlfriend,

Ms. Donna Thompson: (1) first-degree rape, (2) first-degree burglary, and (3) forcible oral

sodomy. Judgment and Sentence, *State v. Leyja*, Case No. CF-2004-7021 (Okla. Co. Dist.

Co. filed Apr. 11, 2006); *see infra* p. 46. Mr. Leyja appealed,[2] and the Oklahoma Court of

---

[1]      Petition Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody, *passim* (Mar. 11, 2009); Brief of Petitioner Pursuant to: 28 U.S. 2254, *passim* (Mar. 11, 2009) ("Petitioner's Opening Brief").

[2]      Brief of Appellant, *Leyja v. State*, Case No. F-2006-409 (Okla. Crim. App. Nov. 14, 2006) ("Petitioner's Direct Appeal Brief").

Criminal Appeals ("OCCA") affirmed.[3]  Mr. Leyja unsuccessfully sought post-conviction

relief[4] and the present action followed.

The Petitioner seeks habeas relief based on:

- insufficient evidence of guilt,

- actual innocence,

- ineffective assistance of trial counsel,

- ineffective assistance of appellate counsel, and

- erroneous admission of expert testimony.

Petitioner's Opening Brief at pp. 1-19; Petitioners [sic] Response to States [sic] Response to

Habeas Corpus at pp. 2-8 (Apr. 17, 2009) ("Petitioner's Reply Brief").

DEFERENTIAL REVIEW: CLAIMS ADJUDICATED BY THE OCCA

The OCCA rejected the claims involving:

- allegations that the Petitioner's trial attorney had been ineffective for failure
  to call Mr. LeRoy Dorman as a witness,[5]

---

[3]     Summary Opinion, *Leyja v. State*, Case No. F-2006-409 (Okla. Crim. App. Oct. 17, 2007)
("OCCA Opinion on Direct Appeal").

[4]     Application for Post-Conviction Relief, *Leyja v. State*, Case No. CF-2004-7021 (Okla. Co.
Dist. Ct. Sept. 8, 2008); Brief in Support, *Leyja v. State*, Case No. PC-2008-1053 (Okla. Crim. App.
Nov. 5, 2008) ("Petitioner's Post-Conviction Appeal"); Order Denying Application for Post-
Conviction Relief, *Leyja v. State*, Case No. CF-2004-7021 (Okla. Co. Dist. Ct. Oct. 8, 2008); Order
Affirming Denial of Application for Post-Conviction Relief, *Leyja v. State*, Case No. PC-2008-1053
(Okla. Crim. App. Feb. 3, 2009) ("Order Affirming Denial of Post-Conviction Application").

[5]     OCCA Opinion on Direct Appeal at p. 3.

- allegations that Mr. Leyja's appellate attorney had acted improperly in filing the direct appeal, resulting in a lack of appellate jurisdiction,[6] and

- challenges to the admissibility of a nurse's expert opinions.[7]

The federal district court should decline to disturb these decisions on habeas review.

I.    Standard for Habeas Review

The federal district court gives deference to the state courts' legal and factual conclusions.

A.    Legal Conclusions

For example, the federal district court engages in limited scrutiny of legal determinations when the state's highest court has reached the merits. In these circumstances, the federal court considers only whether the state appeals court's conclusions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1) (2000).

The threshold issue is whether federal case law clearly establishes the constitutional protection underlying the Petitioner's claim. *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)."), *cert. denied*, __ U.S. __, 129 S. Ct. 1345 (2009). "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or

---

[6]    Order Affirming Denial of Post-Conviction Application at pp. 1-2.

[7]    OCCA Opinion on Direct Appeal at p. 2.

similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context."[8] For this purpose, Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings." *Id.* at 1015. In the absence of Supreme Court precedents, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law." *Id.* at 1017.

If the underlying constitutional right is clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent.[9] These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court holdings or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedent.

---

[8] *House v. Hatch*, 527 F.3d at 1016-17 (footnote & citations omitted); *see Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 2010 WL 596511, Westlaw op. at 3 (Feb. 22, 2010) (*per curiam*) ("A legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of this Court." (citations omitted)).

[9] *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008) ("If there is clearly established federal law, we then consider whether the state court decision was contrary to or involved an unreasonable application of it." (citation omitted)).

*See supra* p. 3. Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses to extend, prior decisions. *See House v. Hatch*, 527 F.3d 10`10, 1018 (10th Cir. 2008), *cert. denied,* __ U.S. __, 129 S. Ct. 1345 (2009).

### B.  Factual Conclusions

The federal district court also gives deference to state courts in their factual findings. In this context, the federal court considers only whether the state court had arrived at a e determination in light of the state court evidence. AEDPA, 28 U.S.C. § 2254(d)(2) (2000). The state court's factual finding may be considered "reasonable" even if the federal court would have decided the matter differently.[10]

## II.  Ineffective Assistance Claims

The OCCA's rejection of the ineffective assistance claims did not involve a conflict with or unreasonable application of Supreme Court precedents.

### A.  Standard for Ineffective Assistance of Trial and Appellate Counsel

As noted above, the threshold inquiry is whether the Supreme Court has clearly established federal law on this claim. *See supra* p. 3. The Supreme Court clearly established a constitutional right to effective assistance of counsel in *Strickland v. Washington*, 466 U.S.

---

[10]    *See Wood v. Allen*, __ U.S. __, 130 S. Ct. 841, 849 (2010) ("a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" (citation omitted)).

668 (1984).[11]   There the Court held that the petitioner must show that the attorney's performance was deficient and prejudicial.  *Strickland v. Washington*, 466 U.S. at 687, 690-91.

B.     Flexibility in the AEDPA's Deferential Standard of Review

Application of the AEDPA's deferential standard is affected by the relative specificity of the Supreme Court's standard.  *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." (citation omitted)).  The *Strickland* standard is expressed in general terms, resulting in latitude for the manner in which the OCCA had analyzed Mr. Leyja's claims involving ineffective assistance.  The Supreme Court has explained:

> And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.
>
> Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, [the habeas petitioner's] ineffective-assistance claim fails.

*Knowles v. Mirzayance*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009) (citations omitted).

---

[11]     *See Young v. Sirmons*, 551 F.3d 942, 952 (10th Cir. 2008) ("[t]he 'clearly established federal law' applicable to this claim is the Supreme Court's decision in *Strickland v. Washington*"), *cert. denied*, __ U.S. __, 130 S. Ct. 272 (2009); *Hooper v. Mullin*, 314 F.3d 1162, 1170 n.3 (10th Cir. 2002) (stating that for purposes of the deferential AEDPA standard in habeas actions, "*Strickland*'s objectively reasonable standard is the clearly established Supreme Court precedent for ineffective assistance claims").

C.      Lack of Prejudice Due to Trial Counsel's Failure to Call LeRoy Dorman as a Witness

Mr. Dorman saw Mr. Leyja and the victim together immediately following the assault. Response to Petition for Writ of Habeas Corpus, Exhibit 2, Appendix A (Apr. 6, 2009) ("Response").  According to the Petitioner, his attorney should have called Mr. Dorman as a witness because he would have testified:

- the Petitioner was not wielding any weapons,

- the victim had not pled for help, and

- the victim had not appeared to be in distress.

Petitioner's Opening Brief at p. 12; Petitioner's Reply Brief at pp. 5-6.

On direct appeal, the OCCA concluded that trial counsel was not ineffective for failure to "locate and call" Mr. Dorman as a witness.  OCCA Opinion on Direct Appeal at p. 3.  Thus, the federal district court must determine whether the OCCA's conclusion was unreasonable "[u]nder the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1420 (2009) (citation omitted); *see supra* p. 6.  This question should be answered in the negative.

The attorney's inability to find and use Mr. Dorman could only be considered ineffective if his absence had prejudiced the outcome. *See supra* p. 6.  "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

In state court, Mr. Leyja presented an affidavit by Mr. Dorman which suggested testimony that:

- Ms. Thompson had not appeared to be in distress in the parking lot,[12]

- he had seen Mr. Leyja in the parking lot but had not seen any weapons,[13] and

- Ms. Thompson had unlocked the passenger door for a man.[14]

The federal district court can assume *arguendo* that Mr. Dorman would have testified at the trial in accordance with his affidavit.[15] Even with this assumption, however, the Court should decline to find prejudice from Mr. Dorman's absence.

Ms. Thompson did not testify at trial that she had exhibited visible signs of distress in the parking lot or that Mr. Leyja had wielded any weapons outside of the apartment or the car.[16] And Ms. Thompson acknowledged that she had "probably" unlocked Mr. Leyja's door

---

[12]     Response, Exhibit 11; *see supra* p. 7.

[13]     Response, Exhibit 11; *see supra* p. 7.

[14]     Response, Exhibit 11; *see supra* p. 7.

[15]     If the Court engages in this assumption, an evidentiary hearing would be unnecessary on the claim.  In similar circumstances, the Tenth Circuit Court of Appeals explained:

> Even were we to assume that [an attorney] and others would testify at an evidentiary hearing in accordance with their affidavits and with assertions made in [the petitioner's] briefs, that would not change the conclusion we reach today.  An evidentiary hearing would add nothing to our inquiry.

*Andrews v. Deland*, 943 F.2d 1162, 1185-86 (10th Cir. 1991) (footnote & citation omitted), *superseded by statute*, AEDPA, 28 U.S.C. § 2244(b)(2)(A), *as recognized in Daniels v. United States*, 254 F.3d 1180, 1189, 1195-98 (10th Cir. 2001) (*en banc*).

[16]     In the preliminary hearing, Ms. Thompson testified that Mr. Leyja was "still wielding his weapons" when he entered the car.  Transcript of Testimony Given at Preliminary Hearing

8

for him to get in the car. Transcript of Trial Proceedings, Vol. 2 at p. 169, *State v. Leyja*, Case No. CF-2004-7021 (Okla. Co. Dist. Ct. Mar. 28, 2006) ("Trial Transcript, Vol. 2"). In these circumstances, the OCCA could reasonably conclude that Mr. Leyja had failed to show a reasonable probability of a different outcome with Mr. Dorman's testimony. The absence of prejudice is fatal to the habeas claim.

D.     Lack of Prejudice from Counsel's Pursuit of an Appeal While a New Trial Motion Remained Pending

The Petitioner alleges that his attorney had filed a defective appeal brief, which caused the OCCA to lack jurisdiction over the appeal. Petitioner's Opening Brief at pp. 8-9. The OCCA concluded that no prejudice existed,[17] and this determination constituted a reasonable application of Supreme Court precedents and the evidence presented in state court.

The threshold issue is whether to allow Mr. Leyja to present new evidence in the habeas action. The Court should answer in the negative because the procedural history in the

---

Proceedings at pp. 32-33, *State v. Leyja*, Case No. CF-2004-7021 (Okla. Co. Dist. Ct. Feb. 25, 2005).

[17]     In the post-conviction appeal, Mr. Leyja argued that Okla. Stat. tit. 22 § 1054.1 was violated by the filing of a direct appeal during the pendency of his motion for a new trial. Petitioner's Post-Conviction Appeal at p. 10. The OCCA apparently interpreted this statement as a claim for ineffective assistance of appellate counsel and held that Mr. Leyja had not established deficiency in the attorney's performance or prejudice in the outcome. Order Affirming Denial of Post-Conviction Application at p. 2.

OCCA would preclude a writ of habeas corpus regardless of any new evidence to be submitted.[18]

Mr. Leyja was convicted on April 10, 2006. Petitioner's Post-Conviction Appeal, Exhibit 1. Three days later, his attorney filed a notice of intent to appeal.[19] On May 2, 2006, the Petitioner filed a *pro se* motion for a new trial. Motion for New Trial Pursuant to Oklahoma Court of Criminal Appeals Rule 2.1, Sections 952, 953 of Title 22 (Okla. Co. Dist. Ct. May 2, 2006). On July 7, 2006, appellate counsel filed a petition in error, stating that a motion for a new trial had not been filed. Petition in Error, *Leyja v. State*, Case No. F-2006-409 (Okla. Crim. App. July 7, 2006).

In his habeas brief, Mr. Leyja argues that his appellate attorney had "filed a fatally defective petition in error which failed to properly invoke the jurisdiction of the appellate court." Petitioner's Opening Brief at p. 7. Because of the alleged error, Mr. Leyja claims that the OCCA lacked jurisdiction over the direct appeal. *Id.* at p. 8.

The Petitioner's theory is misguided. The OCCA addressed the merits of the claims presented on direct appeal. OCCA Opinion on Direct Appeal, *passim*. Thus, if the attorney had waited longer to file the petition in error, the OCCA's decision would presumably have

---

[18]    *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing").

[19]    Notice of Intent to Appeal; Order Determining Indigence, Appellate Counsel, Preparation of Appeal Record, and Granting Trial Counsel's Motion to Withdraw; Court Reporter's Acknowledgment; and Notification of Appropriate Appellate Counsel, if Appointed (Okla. Co. Dist. Ct. Apr. 13, 2006).

stayed the same. One is hard-pressed to imagine how Mr. Leyja was prejudiced by his attorney's submission of the petition too early when the OCCA reached the merits and took the document into account.

Indeed, if the attorney had waited longer, he presumably would have jeopardized the appeal. When the judgment was entered, Oklahoma had two relevant provisions: Okla. Stat. tit. 22 § 1054.1 and Rule 2.1, Rules of the Oklahoma Court of Criminal Appeals. Section 1054.1 provided that if someone moved for a new trial, no one could appeal until the trial court ruled on the motion. *See* Okla. Stat. tit. 22 § 1054.1 (2001).[20] Rule 2.1(A)(2) provided that if a motion for a new trial was filed within ten days of the judgment, the court had to stay the notice of intent to appeal until the ruling on the motion. Rule 2.1(A)(2), Rules of the Oklahoma Court of Criminal Appeals (revised effective Nov. 1, 1995).

Together, these provisions required the attorney to appeal when he did. The judgment was rendered on April 10, 2006. *See supra* p. 10. Three days later, the attorney filed notice of intent to appeal. *See supra* p. 10 & note 19. At that time, the appeal could not have been regarded as premature because no one had moved for a new trial. Mr. Leyja filed a motion for a new trial nineteen days later. *See supra* p. 10. Because Mr. Leyja acted after the ten-day window in Rule 2.1(A)(2), the court had no obligation to stay the appeal. *See supra*

---

[20]     In pertinent part, this law stated: "[I]n the event a motion for a new trial is filed in the trial court by a party adversely affected by the judgment, order or decree, no appeal to the Court of Criminal Appeals may be taken until subsequent to the ruling by the trial court on the motion for a new trial." Okla. Stat. tit. 22 § 1054.1 (2001).

p. 11.[21]  In any event, the court did not issue a stay and the attorney had a duty to file the petition in error within 90 days of the judgment.  Rule 3.1(C), Rules of the Oklahoma Court of Criminal Appeals (revised effective Nov. 1, 1995).  If the attorney had failed to file the petition in this time-period, he would have risked waiver of any right to appeal.  *See id.* ("The filing of the Petition in Error is jurisdictional and failure to timely file constitutes waiver of right to appeal.").

The OCCA reached the merits, presumably because the court believed that it had jurisdiction.  *See supra* p. 10.  Mr. Leyja thinks that the OCCA was incorrect in this belief.  If the OCCA had been mistaken, however, the error would have benefited Mr. Leyja because the OCCA reached the merits of the attorney's arguments.  In these circumstances, the attorney's promptness would have helped the Petitioner.  Mr. Leyja suffered no prejudice, just as the OCCA said.

Mr. Leyja's reliance on *McCullar v. State*, 509 P.2d 137 (Okla. Crim. App. 1973), is misplaced.  *See* Petitioner's Opening Brief at p. 7.  There the defendant filed a petition in error, which stated that no motion for a new trial had been filed.  *See McCullar v. State*, 509 P.2d at 138.  At that time, OCCA Rule 2.4 required the appellant to designate the date that the motion for a new trial had been filed and denied.[22]  The reasoning behind the requirement

---

[21]    As discussed below, Mr. Leyja's delay in filing the new trial motion would have prevented relief in state district court.  *See infra* note 40.

[22]    *See McCullar v. State*, 509 P.2d at 138; *see also* Rule 2.4(A)(4), Rules of the Oklahoma Court of Criminal Appeals (effective July 1, 1970) (requiring the appellant to state in the petition in error the dates that the motion for a new trial had been filed and denied).

was to "allow[] the trial court a final study of the issues before an appeal [could] be perfected." *Id.* at 139. Because the procedural requirements had not been satisfied, the court regarded the petition as "fatally defective" and determined that it lacked jurisdiction. *Id.* at 138.

*McCullar* was based on a set of rules that no longer exists.[23] Effective May 20, 1981, the OCCA amended Rule 2.1(A)(1) to expressly allow the filing of a petition in error while a motion for a new trial remained pending.[24]

Mr. Leyja's appellate counsel complied with the rules in filing the direct appeal. As evidenced by the eventual decision on the merits in the direct appeal, the OCCA believed that it had jurisdiction. As a result the OCCA's determination on the ineffective assistance claim was reasonable, and the federal district court should reject the related habeas theory.

III. Challenges to Nurse Gillespie's Opinion Testimony

On direct examination, Ms. Donna Thompson admitted that she had experienced an orgasm during the alleged rape. Trial Transcript, Vol. 2 at p. 91 ("I had an orgasm to end

---

[23]     Even when *McCullar* was decided, the post-judgment filing of a motion for a new trial would "not interrupt the time period for appeal." Rule 2.1(C), Rules of the Oklahoma Court of Criminal Appeals (effective July 1, 1970).

[24]     The 1981 version of Rule 2.1(A)(1) provided: "The filing of the motion [for a new trial] in the trial court shall not absolve the defendant from his duty to file his appeal in [the Court of Criminal Appeals] within the time provided by law." Rule 2.1(A)(1), Rules of the Oklahoma Court of Criminal Appeals (revised & effective May 20, 1981). The version in effect at the time of Mr. Leyja's conviction provided: "The filing of the motion [for a new trial] in the trial court shall not stay proceedings or absolve the defendant from the duty to file the appeal in [the Court of Criminal Appeals] within the time provided by law." Rule 2.1(A)(1), Rules of the Oklahoma Court of Criminal Appeals (revisions effective Nov. 1, 1995).

it"); *id*. at p. 166 ("I had an orgasm to get it over with"). The State attempted to explain the orgasm through Ms. Terri Gillespie's testimony. Ms. Gillespie, a nurse, testified that sexual assault victims could experience an orgasm as part of the human sexual response. Transcript of Trial Proceedings, Vol. 3 at pp. 49-52, *State v. Leyja*, Case No. CF-2004-7021 (Okla. Co. Dist. Ct. Mar. 29, 2006) ("Trial Transcript, Vol. 3"). Mr. Leyja argues, as he did on direct appeal, that the nurse was not qualified as an expert and that the trial judge should have excluded her opinion testimony because it involved an ultimate issue for the jury. Petitioner's Opening Brief at pp. 17-18; *see* Petitioner's Direct Appeal Brief at pp. 9-12. The OCCA rejected these claims in the direct appeal,[25] and the federal district court should uphold these determinations under the AEDPA's deferential standard.

The threshold issue is whether to conduct an evidentiary hearing on this claim. The Court should answer in the negative. An evidentiary hearing is unnecessary when proof of the petitioner's allegations would not justify federal habeas relief.[26] For this inquiry, the Court must consider the deferential standard of review.[27]

---

[25] OCCA Opinion on Direct Appeal at p. 2; *see infra* pp. 16-17.

[26] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." (citation omitted)).

[27] *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." (citation & footnote omitted)).

With deference accorded to the state courts' consideration of the evidence and Oklahoma law, the federal district court would need to deny habeas relief regardless of any new proof to be submitted by Mr. Leyja. Thus, the Court should decline to conduct an evidentiary hearing. *See supra* p. 8 & note 15.

In part, Mr. Leyja argues that Ms. Gillespie was not qualified to serve as an expert. *See supra* p. 14. The present issue is whether this conclusion was reasonable based on the evidence. *See supra* p. 5; *see also Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (*per curiam*) (treating qualification as an expert as a factual finding for purposes of federal habeas review). The federal district court should answer in the affirmative.

At trial, the nurse testified that she had:

- been certified as a registered nurse;[28]

- obtained a bachelor's degree in nursing from the University of Oklahoma, had completed sexual assault training for adults and pediatrics, and had advanced training as a clinical forensic nurse;[29]

- received supplemental training for sexual assault nursing and clinical forensic nursing;[30]

- served as a supervisor and trainer for Oklahoma County's Sexual Assault Nurse Examination Program;[31] and

---

[28] Trial Transcript, Vol. 3 at p. 39.

[29] Trial Transcript, Vol. 3 at p. 41.

[30] Trial Transcript, Vol. 3 at p. 41.

[31] Trial Transcript, Vol. 3 at pp. 39-40.

- testified as an expert witness in Oklahoma County District Court regarding human sexual response.[32]

In light of this evidence, the trial court could reasonably find that Ms. Gillespie was qualified to testify an expert in the area of human sexual response.[33]

Mr. Leyja also contends that the nurse had testified on an ultimate issue for the jury. *See supra* p. 14. This argument is invalid.

Oklahoma law provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Oklahoma Evidence Code, Okla. Stat. tit. 12 § 2704 (2001). Thus, in Oklahoma, "[a]ny properly qualified expert testifying in accordance with standards governing the admissibility of expert testimony may offer an opinion on the ultimate issue if it would assist the trier of fact." *Johnson v. State*, 95 P.3d 1099, 1104 (Okla. Crim. App. 2004) (footnotes omitted).

The OCCA followed this body of precedent when it concluded that the trial court had not "err[ed] in admitting expert testimony regarding a [sexual assault nurse examiner]

---

[32]    Trial Transcript, Vol. 3 at pp. 41-42.

[33]    Many state appellate courts have addressed a similar issue, and virtually all appear to uphold a trial court's finding that a sexual assault nurse examiner is qualified under state law to testify as an expert. *See Velazquez v. Virginia*, 557 S.E.2d 213, 218 (Va. 2002) (qualification as an expert on the causation of injuries in the context of an alleged sexual assault); *Pearce v. State*, 686 S.E.2d 392, 399-400 (Ga. Ct. App. 2009) (qualification in the field of sexual assault examinations and the child sexual abuse accommodation syndrome); *People v. Claudio*, 2010 WL 597083, Westlaw op. at 3-4 (Cal. Ct. App. Feb. 19, 2010) (unpublished op.) (qualification to discuss vaginal penetration by the defendant); *Newbill v. Indiana*, 884 N.E.2d 383, 398 (Ind. Ct. App. 2008) (qualification to discuss physical findings related to allegations of forced sexual activity).

examination and human sexual response." OCCA Opinion on Direct Appeal at p. 2 (footnote omitted); *see supra* p. 14. The federal district court is bound by the OCCA's conclusion that the nurse had qualified as an expert and that her testimony had been admissible under Oklahoma law.[34] Because the testimony was admissible under state law, the ruling could not have deprived Mr. Leyja of fundamental fairness.[35] In these circumstances, the federal district court should reject the due process claims arising out of the allowance of Nurse Gillespie's opinion testimony.

## INDEPENDENT CONSIDERATION: CLAIMS NOT ADJUDICATED BY THE OCCA AND INVALID ON THE MERITS

Mr. Leyja argues that:

- the OCCA had lacked jurisdiction over the appeal, violating the state and federal constitutions,

- the trial court had improperly allowed testimony by Detective Kim Davis,

- trial counsel had been ineffective for cumulative trial errors, including the failure to call three defense witnesses and to move for a mistrial,

- appellate counsel had been ineffective for failure to assert ineffectiveness of trial counsel,

- the evidence had been insufficient for the conviction, and

---

[34]    *See DeLozier v. Sirmons*, 531 F.3d 1306, 1323 (10th Cir. 2008) (stating on habeas review that the federal court of appeals was bound by the OCCA's evaluation of admissibility under state law), *cert. denied*, __ U.S. __, 129 S. Ct. 2058 (2009).

[35]    *See Fox v. Ward*, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that the petitioner "has not demonstrated any error in the admission of this evidence, much less that the admission of the above evidence rendered the proceeding fundamentally unfair").

- he was actually innocent of the crimes.

The Court should reject the claims on the merits.[36]

I.    Standard for Habeas Review

When the state appellate court has not addressed the merits, the federal district court exercises its independent judgment.[37]

II.    Need for an Evidentiary Hearing

In the direct appeal and post-conviction application, Mr. Leyja did not address the claims ultimately raised in the present action for erroneous admission of Detective Davis' testimony;[38] ineffective assistance for failure to move for a mistrial, failure to object to Nurse Gillespie's testimony on grounds involving nondisclosure, cumulative trial errors, or omission of testimony by Lauren McGowen, Eldon Moelling, and Robert Benavides; ineffectiveness of appellate counsel; erroneous admission of Nurse Gillespie's testimony

---

[36] The Respondent asserts a procedural bar on the claims involving ineffectiveness of appellate counsel and ineffective assistance of trial counsel for failure to object to continuation of the proceedings, to subpoena the victim, to move for a mistrial, or to call Eldon Moelling, Lauren McGowen, and Robert Benavides. Response at pp. 35-46. But, the federal district court need not address the issue of procedural default in light of the invalidity of the habeas claims on the merits. *See Matthews v. Workman*, 577 F.3d 1175, 1192 n.7 (10th Cir. 2009), *cert. denied*, __ U.S. __, __ S. Ct. __, 2010 WL 266009 (Mar. 22, 2010) (No. 09-8681).

[37] *See Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002) ("If a claim was not decided on the merits by the state courts . . ., we may exercise our independent judgment in deciding the claim." (citation omitted)).

[38] On direct appeal, Mr. Leyja argued that Detective Davis' testimony had been improperly admitted under Oklahoma law. Petitioner's Direct Appeal Brief at p. 13. In his habeas brief, Mr. Leyja asserts a similar argument, but he also invokes his right to due process under the Fourteenth Amendment. Petitioner's Opening Brief at p. 19. The constitutional claim is new, and the Court should exercise its independent judgment. *See supra* p. 18 & note 37.

when it allegedly conflicted with the victim's account; insufficiency of the evidence; and actual innocence.

Federal law restricts evidentiary hearings when the petitioner "has failed to develop the factual basis of a claim in State court proceedings." AEDPA, 28 U.S.C. § 2254(e)(2) (2000). Diligence turns on the "petitioner's efforts to develop facts in compliance with state law." *Fairchild v. Workman*, 579 F.3d 1134, 1145 (10th Cir. 2009) (citation omitted).

On direct appeal, Mr. Leyja could have applied for an evidentiary hearing on the claims involving ineffective assistance of trial counsel for failure to call Eldon Moelling, Lauren McGowen, or Robert Benavides. *See* Rule 3.11(B)(3)(b) (revised effective Nov. 1, 1995). And in the post-conviction application, Mr. Leyja could have requested an evidentiary hearing or submitted affidavits to support any of the claims that he eventually brought in the present action. *See* Okla. Stat. tit. 22 § 1084 (2001);[39] *see also Pickens v. State*, 910 P.2d 1063, 1071 (Okla. Crim. App. 1996) (stating that under Oklahoma law, the district court can receive proof by affidavits in connection with an application for post-conviction relief). The failure to assert the present theories in the post-conviction

---

[39]     This statute provides in pertinent part:

> If the [post-conviction] application cannot be disposed of on the pleadings and record, or there exists a material issue of fact, the court shall conduct an evidentiary hearing at which time a record shall be made and preserved. The court may receive proof by affidavits, depositions, oral testimony, or other evidence and may order the applicant brought before it for the hearing.

Okla. Stat. tit. 22 § 1084 (2001).

application, with the related opportunity to submit affidavits or seek an evidentiary hearing,[40] would constitute a failure to develop the factual foundation of the claim in state court.[41]

In light of the failure to diligently develop the factual basis in state court, Mr. Leyja could only obtain an evidentiary hearing if:

- the claim were to be based on a new rule of constitutional law or a new factual predicate that was not reasonably discoverable earlier and

---

[40]      In seeking a new trial, Mr. Leyja did request an evidentiary hearing on the limited issue involving ineffective assistance of trial counsel for failure to subpoena Eldon Moelling for trial. Motion for New Trial Pursuant to Oklahoma Court of Criminal Appeals Rule 2.1, Sections 952, 953 of Title 22 at p. 3 (Okla. Co. Dist. Ct. May 2, 2006); *see infra* pp. 28-31. However, the motion was not timely, leaving the state district court powerless to grant a new trial even if it had entertained an evidentiary hearing.

"Unless unavoidably prevented," a party must file any motion for a new trial within ten days of the judgment. Okla. Stat. tit. 12 § 653(A) (2001). After this period ends, a party can only obtain a new trial by showing that the grounds could not have been discovered with reasonable diligence within ten days of the judgment. *See* Okla. Stat. tit. 12 § 655 (2001).

Mr. Leyja filed the motion for a new trial 22 days after entry of the judgment. *See supra* pp. 10-11. Thus, the state district court could only entertain the motion if Mr. Leyja had been unable to reasonably discover the grounds at least twelve days earlier. *See supra* note 40 (citing Okla. Stat. tit. 12 § 655 (2001)).

With the motion for a new trial, Mr. Leyja submitted two documents bearing Reverend Moelling's name. Motion for New Trial Pursuant to Oklahoma Court of Criminal Appeals Rule 2.1, Sections 952, 953 of Title 22, Exhibit A (Okla. Co. Dist. Ct. May 2, 2006). The two documents were dated April 6 and 7, 2006, even before the trial was over. *See id.* Thus, Mr. Leyja could not satisfy the statutory requirement of an inability to discover the grounds for the new trial within ten days of the judgment. In light of the failure to meet the statutory deadline, Mr. Leyja cannot show a diligent effort to develop the facts in state court through the motion for a new trial. *See supra* note accompanying text.

[41]      *See Cannon v. Mullin*, 383 F.3d 1152, 1177 (10th Cir. 2004) (stating that the petitioner had not exercised diligence, for purposes of 28 U.S.C. § 2254(e)(2), because he failed to procure affidavits from family members who had been willing to testify).

• the facts underlying the claim would entail clear and convincing evidence that would have led to acquittal in the absence of a constitutional error.

AEDPA, 28 U.S.C. § 2254(e)(2) (2000). Mr. Leyja's habeas claims are not based on a new rule of constitutional law or a new factual predicate that was not reasonably discoverable earlier. Thus, Mr. Leyja is not entitled to an evidentiary hearing on his newly asserted claims.

III.    The OCCA's Jurisdiction Over the Direct Appeal

Mr. Leyja believes that the OCCA lacked jurisdiction over the direct appeal initiated by his attorney. *See supra* p. 10. From this belief, Mr. Leyja has alleged: (1) ineffective assistance of counsel for filing a premature appeal,[42] and (2) violation of the state and federal constitutions based on the OCCA's lack of jurisdiction over the appeal.[43] The Court has elsewhere addressed the invalidity of the ineffective assistance claim. *See supra* pp. 8-9. The claims based on the state and federal constitutions are equally invalid for three reasons: (1) The OCCA did have jurisdiction over the appeal, and the court's exercise of this jurisdiction served to benefit Mr. Leyja rather than to harm him; (2) violation of the state constitution would not justify federal habeas relief; and (3) invocation of the federal constitution is not explained.

As discussed above, the Petitioner's jurisdictional argument is based on a misreading of the OCCA's rules and the sequence of events. *See supra* pp. 9-13. As the OCCA

---

[42]    *See supra* p. 9.

[43]    Petitioner's Opening Brief at p. 8.

concluded in the post-conviction appeal, it did have jurisdiction over the direct appeal and the attorney's action was not premature. *See supra* pp. 10-13. Indeed, by ruling on the merits of the attorney's arguments, the OCCA's exercise of jurisdiction served to benefit Mr. Leyja rather than to harm him. *See supra* p. 12. If the attorney had waited for a ruling on the new trial motion, as the Petitioner suggests, the OCCA might have disallowed any eventual appeal on grounds of timeliness. *See supra* p. 12.

The Petitioner's invocation of the state and federal constitutions would be invalid even if his reading of the OCCA's rules had been correct. A violation of the state constitution would not justify a federal writ of habeas corpus. *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)). As a result, the federal district court should reject Mr. Leyja's reliance on the Oklahoma Constitution to challenge the OCCA's jurisdiction. *See Anderson v. Champion*, 117 F.3d 1428, 1997 WL 383187, Westlaw op. at 2 (10th Cir. July 11, 1997) (unpublished op.).[44]

---

[44] There the Tenth Circuit Court of Appeals stated:

> Finally, [the habeas petitioner] contends the Oklahoma Court of Criminal Appeals lacked jurisdiction under its own procedural rules to review the state district court's decision to modify his sentence. Notably, however, [the petitioner] does not allege his federal constitutional rights were violated by this alleged violation of state procedural rules. Thus, the issue is not cognizable under § 2254.

*Anderson v. Champion*, 117 F.3d 1428, 11997 WL 383187, Westlaw op. at 2 (10th Cir. July 11, 1997) (unpublished op.; citations omitted).

In his opening brief, Mr. Leyja asserts that because the state constitution was violated, the OCCA's exercise of jurisdiction over the appeal resulted in a further violation of the Fourteenth Amendment. Petitioner's Opening Brief at p. 8; *see supra* p. 21. This assertion is not explained. As noted above, the state appeals court correctly concluded that it did have jurisdiction, which benefited Mr. Leyja. *See supra* p. 12. Even if the OCCA's interpretation of its own jurisdiction were somehow in error, however, the Petitioner has not explained his assumption that the mistake would have violated the Fourteenth Amendment. As a result, the federal district court should reject a Fourteenth Amendment claim based on the OCCA's allegedly incorrect decision on its own jurisdiction.[45]

IV.     Admissibility of Testimony by Detective Davis

Mr. Leyja alleges that the trial court had improperly allowed a comment about suspects' propensity to lie because it served only to bolster the victim's credibility and usurped the jury's fact-finding function. Petitioner's Opening Brief at p. 19. The Court should reject the claim.

At trial, the following colloquy took place between the prosecutor and Detective Davis:

> PROSECUTOR:     Had you talked to other people when your investigation - - obviously you talked to Ms. Thompson. But had you talked with other collateral witnesses as well prior to talking to the defendant?

---

[45]     *See Bodine v. Warden of Joseph Harp Correctional Center*, 217 Fed. Appx. 811, 813 (10th Cir. Feb. 22, 2007) (unpublished op.) (holding that a "blanket attack" on the OCCA's handling of a direct appeal "does not state a cognizable claim for federal habeas relief").

DETECTIVE:        Yes, the church, the people at the church, Fernando, Erick.

PROSECUTOR:       Why do you talk to those people first instead of just going straight to get his side of the story?

DETECTIVE:        Because typically, when we talk to a suspect, they lie.

Trial Transcript, Vol. 3 at pp. 75-76.  At this point, defense counsel objected, arguing that credibility was an issue for the jury.  *Id.* at p. 76.[46]

The trial court overruled the objection, reasoning that the testimony was admissible under state law because the detective was being asked her reasons for talking to other witnesses before Mr. Leyja.  *Id.* at pp. 76-77.  On direct appeal, the OCCA upheld the ruling, stating that the trial court had "not err[ed] in allowing [the] officer to describe her investigative technique and give an opinion based on her experience and investigation." OCCA Opinion on Direct Appeal at p. 2 (footnote omitted).

Errors in the application of state law would not justify habeas relief.  *See*, *e.g.*, *Spears v. Mullin*, 343 F.3d 1215, 1225-26 (10th Cir. 2003).  Instead, the Petitioner must show that "the erroneous admission of evidence rendered his trial as a whole fundamentally unfair." *Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002) (citation omitted).  The ultimate issue is whether the jury could fairly assess the evidence in light of the erroneous ruling.[47]

---

[46]     Mr. Leyja claims that his trial attorney failed to object to the comments made by Detective Davis.  Petitioner's Opening Brief at p. 19.  But this allegation is belied by the record.  *See supra* text accompanying note.

[47]     *See Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003) (stating that on habeas review, the court's inquiry regarding fundamental fairness focuses on "whether the jury could judge the evidence fairly in light" of the evidentiary ruling in dispute).

For this inquiry, the federal district court exercises "'considerable self-restraint.'" *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998) (citation omitted).

The Court has little reason to question the fairness of the proceeding based on Detective Davis' comment. Under Oklahoma law, "relevant" evidence is generally admissible. Oklahoma Evidence Code, Okla. Stat. tit. 12 § 2402 (2001). Although credibility is a jury issue, the matter did not become objectionable even if it involved an ultimate issue for the jury. *See supra* p. 16 (discussing the Oklahoma Evidence Code, Okla. Stat. tit. 12 § 2704 (2001)).[48]

A similar issue arose in *Cannon v. State*, 961 P.2d 838 (Okla. Crim. App. 1998). There a detective testified that during an interrogation, he had not believed the defendant's version of events. *See Cannon v. State*, 961 P.2d at 846. The OCCA concluded that the testimony had been properly admitted, as it "was not improper opinion testimony on an ultimate issue since it did not tell the jury what result to reach." *Id*. Instead, the OCCA reasoned, the detective was testifying "based on reasonable inferences drawn from his specialized knowledge in homicide investigation." *Id*.

---

[48]     In the previous discussion, cited in the text, the Court was discussing an expert witness' ability to testify on an ultimate issue for the jury. *See supra* pp. 13-17. Detective Davis could have been regarded as a fact witness rather than an expert witness. *Cf.* Petitioner's Direct Appeal Brief at p. 13 (arguing that Kim Davis' testimony was "improper of a fact witness and constitute[d] improper expert testimony"). But lay testimony, like expert testimony, "'may be helpful even if it bears on the ultimate issue in the case.'" *Brooks v. Barnhart*, 78 Fed. Appx. 52, 59 (10th Cir. Oct. 7, 2003) (unpublished op.) (citation omitted); *accord United States v. Bolden*, 545 F.3d 609, 622 (8th Cir. 2008) ("Opinion testimony by a lay witness is not *per se* inadmissible, even if it addresses an ultimate issue." (citing Fed. R. Evid. 701, 704(a))), *cert. denied*, __ U.S. __, 130 S. Ct. 796 (2009).

Like the witness in *Cannon v. State*, Detective Davis testified about her process and the reasons for it. Trial Transcript, Vol. 3 at pp. 75-77. In doing so, the detective did not testify that Mr. Leyja was lying. Instead, the detective simply testified regarding her reason for talking to other witnesses before she confronted Mr. Leyja.

The federal district court lacks any reason to second-guess the state district court or state appeals court on its application of Oklahoma law. *See supra* p. 24. The Petitioner cannot show an error under state law, much less the far more onerous burden to show an error which had deprived him of fundamental fairness in the trial as a whole. *See supra* p. 17 & note 35. In these circumstances, the federal district court should reject the habeas claim involving Detective Davis' testimony.

V.  Conflict Between the Testimony of Terri Gillespie and Donna Thompson

As noted above, Mr. Leyja appealed in part based on the trial court's decision to allow expert testimony by Nurse Gillespie on grounds that she was not qualified and was discussing an ultimate issue for the jury to decide. *See supra* p. 14. In the present action, Mr. Leyja challenges the decision on a new ground, arguing that the nurse's testimony had "contradict[ed]" the account given by Ms. Thompson. Petitioner's Opening Brief at p. 18. This argument is invalid as a matter of law.

As noted above, the evidentiary ruling could only justify habeas relief if it had erroneously deprived Mr. Leyja of a fundamentally fair trial. *See supra* p. 24. Even if the expert witness had contradicted Ms. Thompson, the conflict would not have rendered either

person's testimony inadmissible.[49]  Instead, the evidentiary conflict would simply have

created an issue for the jury to resolve, like any other evidentiary dispute.  *See United States*

*v. Rogers*, 556 F.3d 1130, 1138 (10th Cir.) (stating that the task of weighing conflicting

evidence is exclusively for the jury), *cert. denied*, __ U.S. __, 129 S. Ct. 2783 (2009).  This

claim is invalid.

VI.    Ineffective Assistance of Trial Counsel

In part, Mr. Leyja alleges that his trial counsel was ineffective.  Petitioner's Opening

Brief at pp. 7-16.

A.    Failure to Call Eldon Moelling, Lauren McGowen, or Robert Benavides at Trial

In the post-conviction appeal, Mr. Leyja argued that his trial attorney was ineffective

for failure to call to the witness stand Eldon Moelling, Lauren McGowen, and Robert

Benavides.  Petitioner's Post-Conviction Appeal at p. 8.[50] Mr. Leyja reasserts this argument

---

[49]    *See Yingling v. Workman*, 2006 WL 1328764, Westlaw op. at 1 (W.D. Okla. May 12, 2006) (Russell, J.; unpublished op.) (holding that a rape victim's testimony was admissible under Oklahoma law even though it was "reasonably susceptible" to interpretations involving multiple inconsistencies with the testimony of the sexual assault nurse examiner), *appeal dismissed*, 206 Fed. Appx. 738 (10th Cir. Nov. 1, 2006) (unpublished op.); *accord United States v. Hogan*, 886 F.2d 1497, 1508 (7th Cir. 1989) (stating that inconsistency between the testimony by government witnesses presented "a matter appropriate for argument, affecting the weight but not the admissibility of the evidence").

[50]    The Petitioner did not refer to Robert Benavides by name.  Instead, the Petitioner referred to his attorney's failure to call the police officers who had interviewed Leroy Dorman.  Petitioner's Post-Conviction Appeal at p. 8.  Robert Benavides was the police officer who had interviewed Leroy Dorman.  *See* Petitioner's Opening Brief, Exhibit F.

in his opening brief.  Petitioner's Opening Brief at p. 13.  The Court should reject Mr. Leyja's argument for habeas relief.

The Petitioner's Burden of Proof

In a habeas proceeding, the petitioner ordinarily bears the burden of persuasion under a standard involving preponderance of the evidence.[51]  Thus, the federal district court must determine whether Mr. Leyja has satisfied his burden to show a deficiency and prejudice through trial counsel's decision not to use Reverend Moelling, Lauren McGowen, or Robert Benavides.  *See supra* p. 6 (discussing the elements of an ineffective assistance claim).

No Deficiency from the Alleged Failure to Call Reverend Eldon Moelling as a Witness

Mr. Leyja alleges that his trial attorney should have called Reverend Moelling as a witness.  *See supra* pp. 27-28.  According to the Petitioner, Reverend Moelling would have testified that the victim continued to see Mr. Leyja at church after Ms. Thompson stated that all communication had stopped.  Petitioner's Opening Brief at p. 13.

On this claim, the Petitioner must demonstrate that the legal representation had fallen "below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  For this purpose, the federal court's scrutiny of the attorney's performance

---

[51]     *See Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (*per curiam*) ("Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." (citation omitted)); *see also Amrine v. Tines*, 131 F.2d 827, 833 (10th Cir. 1942) (stating in habeas proceedings that the petitioner bore the burden to show a due process violation by a preponderance of the evidence).

is "highly deferential," involving "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 (citation omitted).

Mr. Leyja's attorney admits that she did not call Reverend Moelling, but states that she did not do so because:

- she believed he might have been impeached because he had suffered a nervous breakdown in the past and

- she presented other witnesses who testified regarding Mr. Leyja's contact with the victim at church.

Petitioner's Opening Brief, Exhibit C. These reasons are valid and the absence of Reverend Moelling's testimony was not prejudicial to Mr. Leyja.

First, the habeas record provides no reason to question the reasonableness of the attorney's belief that Reverend Moelling had experienced a nervous breakdown.[52] *See DeLozier v, Sirmons*, 531 F.3d 1306, 1325 (10th Cir. 2008) (defense counsel acted reasonably in failing to call a witness because of the possibility that witness could be impeached), *cert. denied*, __ U.S. __, 129 S. Ct. 2058 (2009). If Reverend Moelling had testified, defense counsel would have faced the possibility of cross-examination about his

---

[52]     In his opening brief, the Petitioner challenges some of the attorney's stated reasons for declining to call Reverend Moelling as a witness. Petitioner's Opening Brief at pp. 13-14. But Mr. Leyja does not address the attorney's belief that Reverend Moelling had experienced a nervous breakdown or the related concern over possible impeachment. *See id.*

past nervous breakdown. Defense counsel obviously could have objected at that point. But, she could have validly predicted that the court would overrule her objection.[53]

Second, the trial attorney could reasonably have chosen to avoid this impeachment by presenting similar evidence through other witnesses. *See supra* p. 29. According to Mr. Leyja, the reverend would have "present[ed] documented information depicting the fact that Ms. Thompson was still seeing Petitioner at church-contradicting her testimony that she was no longer seeing Petitioner." Petitioner's Opening Brief at p. 13. But Mr. Leyja's attorney explained that she had presented other evidence of contact between Mr. Leyja and Ms.

---

[53]    Oklahoma appeals courts have not addressed in a published decision whether a nervous breakdown can be used for impeachment. But elsewhere many courts have held that past mental illness may be used for impeachment when it bears on the witness' capacity to perceive or recall events. *See Sinclair v. Turner*, 447 F.2d 1158, 1162 (10th Cir. 1971) ("The fact of . . . mental abnormality either at the time of observing the facts which he reports in his testimony, or at the time of testifying, may be provable, on cross-examination or by extrinsic evidence, as bearing on credibility." (citations omitted)); *accord Walden v. Department of Transportation*, 27 P.3d 297, 307 (Alaska 2001) ("Evidence of a witness's psychiatric condition is admissible if the witness 'suffered from some mental aberration rendering his observation and memory ... unreliable.'" (footnote omitted)); *Connecticut v. Blake*, 942 A.2d 496, 501 (Conn. 2008) (stating that a witness' "'possible mental unsoundness'" is relevant when it has taken place near the time of trial or the events being discussed in the testimony); *Illinois v. Helton*, 506 N.E.2d 307, 311 (Ill. App. Ct. 1987) ("It is well settled that the mental health history of a witness is relevant as it relates to his or her credibility, and is thus a permissible area of impeachment." (citation omitted)).

Thompson. *Id.*, Exhibit C.[54]  This explanation lends further support to the reasonableness of the attorney's approach.[55]

Mr. Leyja has not presented any evidence that would outweigh defense counsel's two stated reasons for not calling Reverend Moelling.  For example, Mr. Leyja has not disputed the existence of a prior nervous breakdown,[56] the potential for damaging impeachment over the witness' mental condition, or the ability to present similar evidence through other witnesses.  Thus, the Court should conclude that Mr. Leyja's attorney  was not ineffective for failure to call Reverend Moelling as a witness.

---

[54]  At trial, Ms. Thompson testified that she had terminated the relationship, at the latest, at the end of October 2004.  Trial Transcript, Vol. 2 at p. 57.  However, at trial, Mr. David Bennett testified that Ms. Thompson and Mr. Leyja had attended the same church class at least twice in November 2004.  Trial Transcript, Vol. 3 at p. 28.  Thus, as explained by defense counsel, she was able to introduce testimony regarding contact between Mr. Leyja and Ms. Thompson through a witness other than Reverend Moelling and avoid impeachment about his nervous breakdown.  *See supra* text accompanying note.

[55]  *See Matthews v. Workman*, 577 F.3d 1175, 1192 (10th Cir. 2009) (holding that defense counsel was not ineffective for failure to call witnesses whose testimony would have been cumulative), *cert. denied*, __ U.S. __, __ S. Ct. __, 2010 WL 266009 (Mar. 22, 2010) (No. 09-8681).

[56]  With his motion for a new trial, Mr. Leyja presented an affidavit by Eldon Moelling.  Motion for New Trial Pursuant to Oklahoma Court of Criminal Appeals Rule 2.1, Sections 952, 953 of Title 22, Exhibit A (Okla. Co. Dist. Ct. May 2, 2006).  In the affidavit, Reverend Moelling stated that he had not been in a mental institution during the trial.  *Id.*  But the reverend did not address whether he had suffered a nervous breakdown in the past.  *See id.*

<u>No Deficiency in the Alleged Failure to Call Lauren McGowen as a Witness</u>

Mr. Leyja also alleges that his trial attorney should have called Lauren McGowen as a witness.  Petitioner's Opening Brief at p. 13.[57]  Ms. McGowen was the daughter of Donna Thompson, the alleged victim.  *See id.*  According to the Petitioner, Ms. McGowen would have testified that her mother had lied about the rape.  *Id.*[58]  But the Petitioner's theory of ineffective assistance lacks supporting evidence.

Mr. Leyja's trial counsel stated that she had not called Ms. McGowen to testify because: (1) investigators in the public defender's office had not been able to find her; and (2) the last known address was a "crisis center," which would create concern about her mental state in connection with cross-examination.  Trial Transcript, Vol. 3 at p. 159.

The Petitioner has not shown the invalidity of either explanation.  For example, the Petitioner does not question Ms. McPhail's inability to find Ms. McGowen or the concern about her ability to withstand cross-examination due to her mental state.  *See supra* pp. 29-30 & note 53.  The risk of impeachment would appear relatively significant because Mr. Leyja

---

[57]    This theory was first raised in Mr. Leyja's post-conviction appeal.  There Mr. Leyja alleged for the first time that Ms. McGowen had told an attorney for the Carver Center "that her mother was only out for money and was lying about Appellant (Leyja)."  Petitioner's Post-Conviction Appeal at p. 9.

[58]    In a brief accompanying the habeas petition, Mr. Leyja stated: "Trial counsel also did not procure the testimony of Lauren McGowen, who contacted attorneys for Carver Center and informed them that her mother was lying."  Petitioner's Opening Brief at p. 13.  In support, the Petitioner cited a letter by his trial counsel, written over two months before the trial had begun.  *Id.* (citing Exhibit C).  In the letter, the attorney stated that she had tried to contact Donna's daughter because of her remark to someone that her mother "was lying."  *Id.*, Exhibit C.

lacks any actual evidence of useful testimony on the part of Ms. McGowen. Indeed, Mr. Leyja apparently bases his belief on a lead given to him by his own attorney, who related a remark by someone that Ms. McGowen had said that her mother was lying. *See supra* note 58. The source of the information is unidentified,[59] and the document is inadmissible.[60] This claim should be rejected based on Mr. Leyja's failure to establish a deficiency in the legal representation.

### No Deficiency or Prejudice from the Failure to Call Robert Benavides as a Witness

In a brief accompanying the petition, Mr. Leyja alleged that his trial counsel should have called Detective Benavides to testify about the information in his report. Petitioner's Opening Brief at p. 13; *see supra* note 50. There the detective reported on statements made by Leroy Dorman. Petitioner's Opening Brief, Exhibit F. But Leroy Dorman's statements to Detective Benavides constitute classic "hearsay." *See Rogers v. State*, 721 P.2d 820, 824 (Okla. Crim. App. 1986) (stating that statements by a codefendant to a police officer

---

[59]     *See* Petitioner's Opening Brief, Exhibit C; *see also supra* note 58.

[60]     In habeas proceedings, the Federal Rules of Evidence "apply to the extent that matters of evidence are not" elsewhere prescribed by rule or statute. Fed. R. Evid. 1101(e). No other rule or statute provides an exception to the federal rules in habeas actions. *Cf.* 28 U.S.C. § 2246 (2000) (stating that in habeas proceedings, the Court may take evidence orally or by deposition or, in the discretion of the judge, through affidavit). As a result, the Federal Rules of Evidence govern in evidentiary habeas proceedings. These rules include Fed. R. Evid. 802, which provides the general rule against the admission of hearsay evidence. Thus, hearsay in an affidavit cannot serve as a basis for habeas relief. *See Greiner v. Wells*, 417 F.3d 305, 325-26 & n.27 (2d Cir. 2005) (stating that double-hearsay in an affidavit could not be used to demonstrate ineffective assistance of counsel in habeas proceedings).

constituted "hearsay").[61]  As a result, the attorney could reasonably have chosen not to call Detective Benavides as a witness and the omission was not prejudicial.

## B.   Failure to Move for a Mistrial

When the State rested, the defense attorney unsuccessfully moved for a demurrer. Trial Transcript, Vol. 3 at p. 113.  In the present action, Mr. Leyja asserts that the attorney was ineffective for failure to add a request for a mistrial.  Petitioner's Opening Brief at pp. 11-12.  But the Petitioner does not identify any grounds for the attorney to seek a mistrial. The conclusory assertion would not entitle Mr. Leyja to relief, as he has not suggested any grounds for a mistrial[62] or any possible reason for the state district court to grant such relief.[63]

---

[61]     The report itself may have constituted inadmissible hearsay.  *See* Okla. Stat. tit. 12 § 2803, 2009 evidence subcommittee's note (stating that Section 2803(8) "make[s] clear that police investigative reports . . . will not be admissible in evidence").  Even if the report had been admissible, however, the references to Mr. Dorman's statements would have fallen within the prohibition against hearsay evidence. *See Manis v. Lawson*, 585 F.3d 839, 844 n.3 (5th Cir. 2009) ("Third party statements included in a police report are not admissible under the public records exception to the hearsay rule." (citation omitted)); *United States v. Ladoucer*, 573 F.3d 628, 635-36 (8th Cir. 2009) (holding that statements to a police officer, memorialized in his report, constituted inadmissible hearsay), *cert. denied*, __ U.S. __, __ S. Ct. __, 2010 WL 596801 (Feb. 22, 2010) (No. 09-8340).

[62]     *See United States v. Blanca-Leon*, 317 Fed. Appx. 836, 838 (10th Cir. Mar. 24, 2009) (unpublished op.) ("Conclusory assertions are insufficient to establish ineffective assistance of counsel." (citation omitted)); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (stating that even though the defendant was *pro se*, the court had no obligation "to fashion [his] arguments for him where his allegations [were] merely conclusory in nature and without supporting factual averments" (citation omitted)).

[63]     *See Henderson v. Cockrell*, 333 F.3d 592, 601-602 (5th Cir. 2003) (rejecting an ineffective assistance claim in light of the failure to show "a reasonable probability that the trial court would have granted a mistrial had counsel requested one" or that denial of such a motion would have led to reversal on appeal); *see also Alidani v. Dooley*, 365 F.3d 635, 642 (8th Cir. 2004) (holding that the district court had correctly rejected an ineffective assistance claim in light of the failure to show a "reasonable probability" of a different outcome if the defense attorney had immediately moved for a mistrial).

Accordingly, the federal district court should reject the ineffective assistance claim predicated on the failure to move for a mistrial.

C.    Failure to Object to Nurse Gillespie's Testimony: Nondisclosure of an Underlying Study

The Petitioner alleges in part that his trial counsel was ineffective for failure to object to Nurse Gillespie's testimony. *Id.* at p. 11. According to Mr. Leyja, the attorney should have objected based on a failure to disclose a Masters and Johnson study which had supported the nurse's testimony. *Id.*

Mr. Leyja bases the need for disclosure on Okla. Stat. tit. 12 § 3226 and Okla. Stat. tit. 22 § 2002(A)(1)(d)-(e). *Id.*[64] These provisions would not require disclosure of the Masters and Johnson study. Thus, counsel was not deficient for declining to object on this basis and the absence of an objection was not prejudicial.

Okla. Stat. tit. 12 § 3226 is part of the Oklahoma Discovery Code. *See* Okla. Stat. tit. 12 § 3224 (2001) ("Sections 3224 through 3237 of this title shall be known and may be cited

---

[64]     In his opening brief, Mr. Leyja did not base the need for disclosure on the federal constitution. *See* Petitioner's Opening Brief at p. 11. In his reply brief, however, Mr. Leyja argued for the first time that the Fourteenth Amendment required disclosure of the Masters and Johnson study. Petitioner's Reply Brief at p. 2. This argument was advanced too late, as it did not appear in the opening brief. *See United States v. Wayne*, 591 F.3d 1326, 1336 n.9 (10th Cir. 2010) (declining to address an argument raised for the first time in a reply brief). Even if the Petitioner had originally included the argument, however, it would have proven invalid as a matter of law because the federal constitution does not require disclosure of a report relied upon by an expert witness. *See Cannon v. Mullin*, 383 F.3d 1152, 1161-62 (10th Cir. 2004) (suggesting that the federal constitution would not have justified exclusion of expert testimony, based on a failure to provide pretrial disclosure, because of the absence of a general constitutional right to discovery in criminal cases).

as the Oklahoma Discovery Code." (footnote omitted)).  This code governs cases that are civil rather than criminal.[65]  As a result, an objection based on Okla. Stat. tit. 12 § 3226 would have proven futile.

Okla. Stat. tit. 22 § 2002(A)(1)(d) and (e) would also have provided little support for an objection.  These provisions require the proponent, upon request, to disclose:

- reports or statements made by the expert and

- papers that the prosecutor intends to use or which had been obtained from the accused.

The Masters and Johnson study did not fall into either category, as it was not authored by Nurse Gillespie, offered into evidence by the prosecutor, or taken from Mr. Leyja.  *See Cannon v. Mullin*, 383 F.3d 1152, 1162 (10th Cir. 2004);[66] *Stemple v. State*, 994 P.2d 61, 68 (Okla. Crim. App. 2000).[67]  Thus, Section 2002(A)(1)(d) and (e) would not have required

---

[65]     *See* Okla. Stat. tit. 12 § 3224 (2001) ("The Oklahoma Discovery Code shall govern the procedure for discovery in all suits of a civil nature in all courts in this state."); *see also Bland v. State*, 991 P.2d 1039, 1041 (Okla. Crim. App. 1999) ("The Oklahoma Discovery Code, 12 O.S.1991, § 3224 *et seq.*, is not applicable in post-conviction proceedings.").

[66]     In applying Oklahoma law, Okla. Stat. tit. 12 § 2002(A)(1)(d), the *Cannon* court noted that "Oklahoma law require[d] the State, upon request by the defense, to disclose expert reports 'including results of physical or mental examinations and of scientific tests, experiments, or comparisons.'" *Cannon v. Mullin*, 383 F.3d 1152, 1162 (10th Cir. 2004) (citing Okla. Stat. tit. 22 § 2002(A)(1)(d)).  The court added, however, that Oklahoma law did "not require that everything to which an expert testifie[d] be contained in the expert's report" and that "the expert's report [did not] need [to] contain all the expert's ultimate conclusions."  *Id.*

[67]     In *Stemple v. State*, the defendant argued that the State had violated Okla. Stat. tit. 22 § 2002 through a failure to disclose testimony proffered by an expert witness.  *See Stemple v. State*, 994 P.2d 61, 68 (Okla. Crim. App. 2000).  The OCCA held that Section 2002 did not require disclosure, explaining:

The State provided a written statement by [the expert witness].  That is all that is

disclosure of the Masters and Johnson study,[68] and defense counsel was not ineffective for declining to object to the nurse's testimony on this ground.

### D. Cumulative Errors by Trial Counsel

Mr. Leyja also seeks federal habeas relief under a theory of cumulative errors allegedly committed by his trial attorney. Petitioner's Opening Brief at p. 15. This claim should be rejected.

According to the Petitioner, defense counsel failed to:

• object to expert testimony which had been based on an undisclosed study,

• move for a mistrial at the end of the State's case,

• present defense witnesses, and

• object to testimony by Nurse Gillespie and Detective Davis.

*See supra* pp. 7-9, 27-37. As noted above, however, these claims are invalid. *See supra* pp. 7-9, 13-17, 23-37. As a result, the related claim for cumulative trial errors is also invalid.[69]

---

required in the Oklahoma Discovery Code. The State is required to disclose a witness's "relevant, written or recorded statements, if any, or if none, significant summaries of any oral statement, ...." 22 O.S.Supp.1998, § 2002(A)(1)(a). There was no violation of the discovery code here.

*Id*.

[68]    Under the Oklahoma Evidence Code, Okla. Stat. tit. 12 § 2705, an expert witness can provide opinion testimony "without previous disclosure of the underlying facts or data, unless the court requires otherwise." The trial judge never ordered production of the Masters and Johnson study.

[69]    *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Because the individual claims of ineffectiveness alleged by [the habeas petitioner] are all essentially meritless, [the petitioner] cannot show that the cumulative error of her counsel rendered him ineffective.").

VII.    Ineffectiveness of Appellate Counsel

The Petitioner also asserts that on direct appeal, his attorney should have alleged ineffectiveness of trial counsel. Petitioner's Opening Brief at p. 16. This assertion is invalid.

A.    Ineffectiveness of Trial Counsel for Failure to Subpoena Ms. Thompson

In one sentence, the Petitioner asserts: "Appellate counsel was also inneffective [sic] to the extent appellate counsel failed to cite inneffective [sic] trial counsel for failure in defense of Petitioner by not issuing subpoena to alleged victim to subject alleged victim to direct examination at trial." Petitioner's Opening Brief at p. 10. This assertion is not explained elsewhere and appears unsupportable.

The victim testified at the trial for the prosecution, and Mr. Leyja's trial counsel conducted an extensive cross-examination. Trial Transcript, Vol. 2 at pp. 132-79. The Petitioner does not suggest any other questions that his attorney could have asked if she had recalled Ms. Thompson during the defense's case-in-chief. In the absence of such additional questions, the Court would have little basis to regard trial counsel as ineffective for failure to subpoena Ms. Thompson.[70] *A fortiori*, the Court cannot regard appellate counsel as

---

[70]    *See United States v. Simpson*, 32 Fed. Appx. 507, 509-10 (10th Cir. Jan. 30, 2002) (unpublished op.) (rejecting an ineffective assistance claim for failure to subpoena witnesses because they had been "willing to appear at trial without a subpoena").

deficient based on a failure to assert ineffectiveness of trial counsel for her decision not to subpoena Ms. Thompson.[71]

B. **Ineffectiveness of Trial Counsel for Failure to Object to Continuation of the Proceedings**

Mr. Leyja also asserts that his appeal should have included an allegation of ineffectiveness based on trial counsel's "failure to object to the continuation of the trial proceedings when the consent element arose and negated criminal liability." Petitioner's Opening Brief at p. 9. This assertion is not explained or supported.

Consent was a disputed issue throughout the trial. Indeed, at the inception of the trial, defense counsel admitted that Mr. Leyja had entered the apartment and engaged in intercourse with Ms. Thompson. Trial Transcript, Vol. 2 at p. 43. The overriding issue, beginning with opening statements, was whether Ms. Thompson had consented to Mr. Leyja's entry into the apartment and the sexual encounter. Mr. Leyja's trial counsel challenged the sufficiency of the State's proof through a demurrer. Trial Transcript, Vol. 3 at p. 113; *see supra* p. 34. The Petitioner has not identified any further steps that his attorney should have taken to contest the continuation of proceedings based on the evidence of consent. Thus, omission of the issue on direct appeal did not reflect a deficiency in the appellate representation. In these circumstances, the Court should reject the habeas claim of ineffectiveness on the part of appellate counsel.

---

[71] *See Massingale v. Cody*, 61 F.3d 916, 1995 WL 434832, Westlaw op. at 1 (10th Cir. July 25, 1995) (unpublished op.) (holding that appellate counsel could not be considered ineffective because the omitted claim, ineffectiveness of trial counsel, would have been invalid).

C.    Ineffectiveness of Trial Counsel for Failure to Seek a Mistrial or Elicit Testimony by Lauren McGowen, Reverend Moelling, or Robert Benavides

In addition, the Petitioner argues that his appellate attorney was ineffective for omission of arguments based on trial counsel's failure to seek a mistrial or elicit testimony from Lauren McGowen, Reverend Moelling, or Robert Benavides. Petitioner's Opening Brief at pp. 11-12, 16. As noted above, however, trial counsel was not ineffective for these omissions. *See supra* pp. 27-34. As a result, the federal district court cannot regard the appellate attorney as ineffective for failure to complain about trial counsel's omissions. *See supra* pp. 38-39 & note 71.

## VIII.   Sufficiency of the Evidence

Mr. Leyja urges insufficiency of the evidence to support the conviction for first-degree rape and first-degree burglary[72] because the victim had allowed the Petitioner into her apartment and had consented to sexual intercourse. Petitioner's Opening Brief at pp. 2-6. The Court should reject these arguments.

A.    The Applicable Standard

When the sufficiency of evidence is challenged in a habeas action, the federal district court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation

---

[72]    Mr. Leyja does not challenge the sufficiency of the evidence on the conviction for forcible oral sodomy. *See* Petitioner's Opening Brief at pp. 4-7.

omitted).  For this inquiry, the federal district court must refer "to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324 & n.16.  Therefore, the Court must consider Oklahoma law in connection with the habeas claims.

<u>First-Degree Burglary</u>

For the first-degree burglary conviction, Oklahoma law required proof of:

- breaking and entering

- a dwelling

- of another

- in which a person was present

- with the intent to commit some crime therein.

*See* Okla. Stat. tit. 21 § 1431 (2001); OUJI-CR 5-12 (2d ed.).  Mr. Leyja challenges the evidence of a "breaking," insisting that the victim had voluntarily allowed him in her apartment.  Petitioner's Opening Brief at pp. 4-5.

Under Oklahoma law, "the physical force necessary to constitute 'a breaking' as an element of burglary may be any act of physical force, however slight, by which obstructions to entering are forcibly removed."  *Worchester v. State*, 536 P.2d 995, 998 (Okla. Crim. App. 1975) (citations omitted).

Notwithstanding Mr. Leyja's account, Ms. Thompson's testimony was sufficient to support satisfaction of the "breaking" element.  Ms. Thompson testified that as she was leaving her apartment, Mr. Leyja "was there waiting and busted in on [her], put his arm over

[her] eyes (indicating) and a knife to [her] throat and backed [her] up into the living room and shut the door." Trial Transcript, Vol. 2 at p. 84. This testimony was sufficient to support the finding of a "breaking" on the part of Mr. Leyja.[73]

As noted above, Mr. Leyja provided contrary testimony, stating that Ms. Thompson had allowed him to enter the apartment. Transcript of Trial Proceedings, Vol. 4 at pp. 30-31, 102-103, *State v. Leyja*, Case No. CF-2004-7021 (Okla. Co. Dist. Ct. Mar. 30, 2006) ("Trial Transcript, Vol. 4"); *see supra* pp. 40-41. But the evidentiary conflict did not require the jury to accept Mr. Leyja's account.[74] As a result, the Court should reject the habeas claim on the burglary conviction.

B.    First-Degree Rape

The Court should also reject the habeas claim on the rape conviction.

To sustain the conviction for first-degree rape under Oklahoma law, the State had to prove:

---

[73]    *See Fields v. Gibson*, 277 F.3d 1203, 1218 (10th Cir. 2002) (holding under Oklahoma law that the elements of "breaking" and "entering" were met by evidence that the petitioner had pushed open the front door and entered the victim's home); *Roberts v. State*, 29 P.3d 583, 586 (Okla. Crim. App. 2001) ("using force to enter through an open or partially open door can constitute a breaking" (footnote omitted)).

[74]    The OCCA has explained:

If the State has put on sufficient evidence of the use of force to obtain entry, a burglary conviction can be upheld even if the defendant puts on some evidence that he had permission to enter the relevant premises. As this Court has previously recognized, whether the defendant has committed a "breaking" under such circumstances is a question of fact for the jury.

*Roberts v. State*, 29 P.3d 583, 588 (Okla. Crim. App. 2001) (footnote omitted).

- sexual intercourse

- with a person who was not the spouse of the defendant

- where force or violence had been used or threatened, accompanied by apparent power of execution to the victim.

*See* Okla. Stat. tit. 21, §§ 1111(A)(3), 1114(A)(3) (2001); OUJI-CR 4-120 (2d ed.). Mr. Leyja contends that the victim had consented to sexual intercourse, negating criminal liability for rape. Petitioner's Opening Brief at pp. 6-7; Petitioner's Reply Brief at pp. 4-5; *see supra* p. 40. In support, the Petitioner cites a letter in which his attorney stated that in a call to "911" and at trial, Ms. Thompson had acknowledged consent to sex with Mr. Leyja. Petitioner's Opening Brief at p. 6; *see also id.*, Exhibit C. But the attorney had actually stated: "In the [911] tape and during the trial, the victim stated that she consented to the sex because Mr. Leyja was threatening her with a hammer and a knife." Petitioner's Opening Brief, Exhibit C. And at trial, Ms. Thompson admitted to intercourse with Mr. Leyja, but explained that she had engaged in sex only because he had threatened her with a knife and hammer and she feared for her life. Trial Transcript, Vol. 2 at pp. 85-90. Thus, Ms. Thompson's testimony allowed the trier of fact to conclude that she had engaged in sexual intercourse only because of a threat to use force or violence.[75] This finding would suffice for guilt on the charge of first-degree rape. *See supra* pp. 42-43.

---

[75]     *See Jones v. McKune*, 214 Fed. Appx. 784, 787 (10th Cir. Jan. 26, 2007) (unpublished op.) (holding that the victim's testimony, in itself, was sufficient for a rape conviction); *Peninger v. State*, 721 P.2d 1338, 1341 (Okla. Crim. App. 1986) (holding that a victim's testimony, in itself, was sufficient for a rape conviction).

IX.  Actual Innocence

Mr. Leyja argues that he is actually innocent of the crimes based on Ms. Thompson's consent.  Petitioner's Opening Brief at pp. 4-6; Petitioner's Reply Brief at pp. 4-5.  But this claim would not support habeas relief.  *See Herrera v. Collins*, 506 U.S. 390 (1993).[76]

X.  Summary

The Court should reject the claims involving:

- lack of jurisdiction over the direct appeal;

- improper admission of testimony by Detective Davis;

- ineffective assistance of counsel;

- insufficiency of the evidence; and

- actual innocence.

THE PETITIONER'S REQUEST FOR A STAY

In his reply, the Petitioner requests a stay to add a claim that his appellate counsel was deficient for failure to assert various claims concerning trial counsel's ineffectiveness.

---

[76]     There the Supreme Court stated:

[A] claim of "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. . . .  [This] exception is available "only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence."  We have never held that it extends to freestanding claims of actual innocence.

*Herrera v. Collins*, 506 U.S. at 404-405 (emphasis in original; citation omitted).

Petitioner's Reply Brief at p. 9.  The Court should deny the request because the suggested claim lacks merit.

I.      Standard of Ineffective Assistance of Appellate Counsel

For appellate counsel, the Petitioner must show that his attorney's representation in the appeal was deficient and prejudicial.  *See supra* p. 6.  Prejudice cannot be established if an omitted issue lacks merit.  *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (if an omitted issue lacks merit, counsel's failure to raise it on appeal does not reflect ineffective assistance).

II.     Mr. Leyja's Appellate Counsel Was Not Ineffective

The Respondent filed the state court records, including the transcript of the preliminary hearing, and forwarded a copy to Mr. Leyja.  *See* Notice of Conventional Filing of State Court Records (Apr. 6, 2009).  Apparently, the Petitioner read the transcript of the preliminary hearing and noted an absence of findings concerning:

- his prior convictions,

- probable cause, and

- binding the Petitioner over for trial.

Petitioner's Reply Brief at p. 9.  Mr. Leyja believes that his trial attorney should have ensured such findings and that his appellate attorney should have raised the alleged deficiency on direct appeal.  *Id.*[77]  Mr. Leyja is mistaken.

---

[77]    Mr. Leyja does not seek to add a claim regarding trial counsel's ineffectiveness.  *See* Petitioner's Reply Brief at p. 9.

For the prior convictions, Mr. Leyja states:

> Petitioner discovered that there was no stipulation to prior felony [sic] made during hearing. The State offered no proof of prior convictions and Petitioner was not given notice of the offense charged and that said offense was subjected to enhance punishment due to prior felonies . . . .

*Id.* In this passage, Mr. Leyja suggests a lack of notice regarding the State's ability to use the prior convictions for enhancement. This suggestion is belied by the record.

The jury found Mr. Leyja guilty of first-degree rape, first-degree burglary, and forcible oral sodomy. Trial Transcript, Vol. 4 at pp. 174-75; *see supra* p. 1. Prior to sentencing, the State presented evidence that Mr. Leyja had previously been convicted on three other felonies. *Id.* at pp. 179-82. In addition, evidence of the prior convictions had previously been filed as part of the Information. Information at p. 2, *State v. Leyja*, Case No. CF-2004-7021 (Okla. Co. Dist. Ct. Dec. 22, 2004).[78]

Mr. Leyja correctly asserts that the preliminary hearing transcript contained no findings regarding the prior convictions. But he was clearly provided notice of the prior convictions with the filing of the Information. Accordingly, the Court should reject the Petitioner's argument regarding a lack of notice.[79]

---

[78]    The Court may take judicial notice of the state court record. *See St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (discussing judicial notice of state court records).

[79]    *See United States v. Barrow*, 448 F.3d 37, 42 (1st Cir. 2006) (holding that no due process violation took place when an information, with two prior convictions to be used for enhancement, was filed one day before the trial and served on the morning of trial); *see also United States v. Martinez*, 30 Fed. Appx. 900, 907-908 (10th Cir. Feb. 22, 2002) (unpublished op.) (holding that due process does not require the government to provide formal pretrial notice of an intention to seek a sentence enhancement under the Armed Career Criminal Act).

The Petitioner also asserts that the preliminary hearing transcript lacked findings of probable cause and an order to bind him over for trial. Petitioner's Reply Brief at p. 9. Again, Mr. Leyja faults his trial attorney for failure to ensure the existence of these findings. *Id.* The state court record indicates that Mr. Leyja was bound over for trial. *See* Bind Over/Waiver Order *State v. Leyja*, Case No. CF-2004-7021 (Okla. Co. Dist. Ct. Feb. 25, 2005); *see also supra* note 77 (discussion of judicial notice of state court records). Because Mr. Leyja was bound over for trial, the trial court had obviously found the existence of probable cause. *See* Okla. Stat. tit. 22 § 258 (Sixth) (2001) ("Once a showing of probable cause is made the magistrate shall terminate the preliminary hearing and enter a bindover order . . . ."). Mr. Leyja does not argue otherwise. Instead, he contends that his attorney had failed to ensure an express finding of probable cause at the preliminary hearing. But the judge had no obligation to spell out the finding of probable cause once he bound Mr. Leyja over for trial. *See id.*

III.  Summary

The Petitioner's argument concerning his trial attorney is meritless, which necessarily invalidates the claim that appellate counsel should have raised the issue on direct appeal. *See supra* pp. 38-39, 45 & note 71. As a result, the Court should overrule the request for a stay to add a claim regarding ineffective assistance on the part of the appellate attorney.

## RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

For the reasons discussed above, the federal district court should reject the claims involving ineffective legal assistance, erroneous admission of testimony by Terri Gillespie and Kim Davis, sufficiency of the evidence, and actual innocence. The request for a stay should also be denied.

The Petitioner can object to this report and recommendation. To do so, Mr. Leyja must file an objection with the Court Clerk for the Western District of Oklahoma. The deadline for objections is April 26, 2010. *See* 28 U.S.C. § 636(b)(1) (2000); Fed. R. Civ. P. 6(a)(3)(A), 6(d), 72(b)(2). The failure to timely object would foreclose appellate review of the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## STATUS OF THE REFERRAL

The referral is terminated.

Entered this 7th day of April, 2010.

Robert E. Bacharach
United States Magistrate Judge